**AIN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JOHN M. SCHOPPE, | ) | Case No. 09-4652 |
| | ) | (Substantively Consolidated) |
| Debtor. | ) | |
| | ) | Hon. Carol A. Doyle |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on **September 5, 2013** at **11:00 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Carol A. Doyle inthe United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, 100 S. Third Street, Room 240, Geneva, Illinois, and present the attached **First And Final Application Of Jenner & Block LLP For Compensation And Reimbursement Of Expenses As Special Counsel To The Trustee**. You may appear at that time and place if you so desire.

Dated: August 9, 2013

                                                  Respectfully submitted,

                                                  JENNER & BLOCK LLP

                                                  By: */s/ Christine L. Childers*
                                                              A Partner

Ronald R. Peterson (2188473)
Christine L. Childers (6277245)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: 312-222-9350
Facsimile: 312-527-0484

## CERTIFICATE OF SERVICE

I, Christine L. Childers, an attorney, hereby certify that on August 9, 2013, I caused a copy of the attached **Notice Of Motion** and **First And Final Application Of Jenner & Block LLP For Compensation And Reimbursement Of Expenses As Special Counsel To The Trustee** to be served electronically on those entities who receive notice through the ECF system and identified on the attached Service List.

*/s/ Christine L. Childers*
Christine L. Childers

## SERVICE LIST

## REGISTRANTS SERVED VIA CM/ECF NOTIFICATION

- Jeffrey S. Burns    jburns@cbklaw.com
- Kurt M Carlson    kcarlson@muchshelist.com, knoonan@carlsondash.com
- Mark J. Carroll    carrollmark@ameritech.net
- Christine L Childers    cchilders@jenner.com, docketing@jenner.com; aallen@jenner.com;  mmatlock@jenner.com
- Carleen L Cignetto    cignettolaw@gmail.com
- William J Connelly    wconnelly@hinshawlaw.com
- Michael J. Davis    mdavis@archerbay.com, davislaw80@gmail.com
- Bruce Dopke    bruce@dopkelaw.com
- Megan A Drefchinski    mdrefchinski@collinslaw.com, ktaylor@collinslaw.com
- Kimberly A. Duda    kduda@kdudalaw.com, emma@kdudalaw.com; erica@kdudalaw.com
- Deborah K Ebner    dkebner@deborahebnerlaw.com, sbutz@deborahebnerlaw.com; webmaster@debnertrustee.com;  lizd@deborahebnerlaw.com
- Alan I Ehrenberg    aehrenberg@ehrenbergeganlaw.com
- Maria Georgopoulos    nd-three@il.cslegal.com
- Cameron M Gulden    USTPRegion11.es.ecf@usdoj.gov
- Fred R Harbecke    fredrharbecke@sbcglobal.net
- Richard L Hirsh    richala@sbcglobal.net
- Michael J Kalkowski    mkalkowski@fisherandshapirolaw.com, BK_IL_Notice@fisherandshapirolaw.com
- Patrick C Keeley    pkeeley@pkalaw.com, iutim@aol.com;  jsingleton@pkalaw.com; mtader@pkalaw.com;  tjackson@pkalaw.com;  npandey@pkalaw.com; dolson@pkalaw.com;  soliver@pkalaw.com
- Patrick M Kinnally    pkinnally@kfkllaw.com, mlenert@kfkllaw.com; tdegrado@kfkllaw.com
- Jason N Knapp    jknapp@jenner.com, mmatlock@jenner.com
- Kelly A Kramer    kkramer@dankramerlaw.com
- Connie J Lambert    cjlambert@deborahebnerlaw.com
- Richard G Larsen    rlarsen@kleinstoddard.com, vmaurer@kleinstoddard.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- John A Lipinsky    jlipinsky@comananderson.com, khaskell@comananderson.com; kdavis@comananderson.com
- Tyler J Manic    tmanic@ehrenbergeganlaw.com
- Emily N Masalski    masalski@dlec.com, richards@dlec.com;  shump@dlec.com; emasalski@yahoo.com;  stein@dlec.com
- Kelly J McClintic    kmcclintic@keatingshure.com, smcclintic@keatingshure.com
- Kevin H Morse    khmorse@arnstein.com
- Monica C O'Brien    gstern1@flash.net
- Stanley W Papuga    spapuga@kropik.net
- Yanick Polycarpe    ypolycarpe@atty-pierce.com, northerndistrict@atty-pierce.com
- Dennis E. Quaid    dquaid@tcfhlaw.com
- Elizabeth E Richert    erichert@colemanlawfirm.com, dmueller@colemanlawfirm.com
- Arthur W Rummler    arthur.rummler@gmail.com, artrummler@juno.com

- 2 -

- Carl F Safanda    csafanda@xnet.com
- Roy Safanda    rsafanda@xnet.com, rsafanda@ecf.epiqsystems.com
- Carl F. Safanda, Esq    rsafanda@xnet.com
- Mark E Shure    mshure@llflegal.com, pfleming@llflegal.com
- Donald J Simantz    simantz@ashlaw.net
- Miriam R. Stein    mstein@chuhak.com, kgord@chuhak.com
- Gregory K Stern    gstern1@flash.net, steve_horvath@ilnb.uscourts.gov
- William T Surin    aslaw@mchsi.com
- Gloria C Tsotsos    nd-two@il.cslegal.com
- Bradley J Waller    bwaller@ksbwl.com, vmaurer@ksbwl.com
- Martin J Wasserman    mwasserman@carlsondash.com, knoonan@carlsondash.com
- Timothy P Whelan    tpwlaw@comcast.net, tpwlaw@comcast.net
- David O. Yuen    dyuen@tresslerllp.com, jborcia@tresslerllp.com; tresslerdocket@tresslerllp.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JOHN M. SCHOPPE, | ) | Case No. 09-4652 |
| | ) | (Substantively Consolidated) |
| Debtor. | ) | |
| | ) | Hon. Carol A. Doyle |

**FIRST AND FINAL APPLICATION OF JENNER & BLOCK LLP FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT
<u>OF EXPENSES AS SPECIAL COUNSEL TO THE TRUSTEE</u>**

Jenner & Block, LLP ("Jenner"), as special counsel to Roy Safanda (the "Trustee"), chapter 7 trustee of the bankruptcy estate of the above-captioned debtor ("Schoppe" or the "Debtor")[1], pursuant to sections 327, 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 5082-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), and the United States Trustee Fee Guidelines — Guidelines For Reviewing Applications For Compensation And Reimbursement Of Disbursements Filed Under 11 U.S.C. § 330 (Appendix A To 28 C.F.R. § 58) (the "UST Guidelines"), hereby submits this first and final application (the "Application") for compensation of services rendered and reimbursement of expenses incurred on behalf of the Trustee for the period from August 18, 2010 through July 31, 2013 (the "Application Period"), seeking allowance of (i) $645,790.50

---

[1] Mr. Safanda also is the Chapter 7 Trustee of associated debtors RML Capital Investments, Inc. (Case 09-04609), Premier Homes, LLC (09-04654) and Highland Real Estate of Aurora, Inc. (Case 09-04656). On October 28, 2010, the Court entered an Order substantively consolidating the chapter 7 cases of John M. Schoppe (09-04652), RML Capital Investment, LLC, Premier Homes, LLC, and Highland Real Estate of Aurora, LLC, all of which are collectively referred to herein as the "Debtors".

for the actual, reasonable, and necessary legal services rendered by Jenner, and (ii) actual, reasonable and necessary expenses incurred in the amount of $42,771.86.  In support of the Application, Jenner respectfully states as follows:

## BACKGROUND AND JURISDICTION

1.  On February 13, 2009 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code.

2.  On July 19, 2010, on the motion of the Official Committee of Unsecured Creditors, this Court entered an Order converting the Debtor's chapter 11 case to one under chapter 7.  (Docket No. 473.)  On July 26, 2010, the U.S. Trustee appointed Roy Safanda as the chapter 7 trustee in the case.  (Docket No. 483).

3.  This Court has jurisdiction over the Application pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 327, 328 and 330 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 2016, Local Rule 5082-1, and the UST Guidelines.

## RETENTION OF JENNER & BLOCK

4.  On, September 17, 2010, the Trustee filed a motion to retain Jenner as his special counsel.  (Docket No. 516.)

5.  On September 23, 2010, this Court entered an order authorizing the Trustee to retain Jenner as his special counsel in the Debtor's chapter 7 case.  (Docket No. 525.)

6.  Pursuant to Rule 2016(b), Jenner has not shared, nor agreed to share, any compensation it has received or may receive in this case with another person or party other than with Jenner's partners, of counsel, associates, and other employees, or any compensation another person or party has received or may receive in this case.

2

**RELIEF REQUESTED**

7. Jenner submits this Application for allowance of (a) compensation for actual, reasonable, and necessary professional services performed as special counsel to the Trustee, and (b) reimbursement for actual, reasonable, and necessary disbursements made to pay expenses incurred in representing the Trustee.

8. Jenner rendered legal services to the Trustee having a value of $645,790.50 during the Application Period, calculated at Jenner's usual and customary hourly rates. In addition, Jenner made disbursements to pay expenses in the amount of $42,771.86 during the Application Period. Jenner has not received any payment for services performed or reimbursement for expenses incurred during the Application Period. Jenner therefore seeks allowance in this Application of $645,790.50 in fees and $42,771.86 in expenses incurred during the Application Period.[2]

9. The fees sought by this Application reflect an aggregate of 1,617.10 hours of attorney and paraprofessional time spent and recorded in performing services for the Trustee during the Application Period. This fee request does not include time that might be construed as duplicative or otherwise not beneficial to the Debtor's estate, which already has been eliminated by Jenner.

10. Jenner's fees and costs were incurred as special counsel to the Trustee. Jenner's fees were derived using the applicable hourly billing rates for the firm's personnel who rendered such services. Attached hereto as Exhibit A is a schedule setting forth all Jenner professionals and paraprofessionals who have performed services in the Debtor's bankruptcy case during the Application Period, the capacity in which each individual is employed by Jenner, the hourly

---

[2] Jenner has voluntarily reduced the amount of its compensation request by $450,301.50 and is voluntarily waiving its right to payment of this amount for services rendered to the Trustee and the Estate.

3

billing rate charged for services performed by such individual, the aggregate number of hours expended in this case and fees billed therefore, the year in which each professional was first licensed to practice law and the year in which each professional graduated from law school.

11. Attached hereto as <u>Exhibit B</u> is a summary by project categories of the fees generated by the services performed during the Application Period and, for each separate project category, a list of each person providing services on the project, a statement of the number of hours spent and the amount of compensation requested for each person on the project.

12. Attached hereto as <u>Exhibit C</u> is a schedule specifying the categories of expenses for which Jenner is seeking reimbursement and the total amount for each such expense category.

13. Jenner maintains computerized records of the time spent by all attorneys and paraprofessionals and the expenses incurred in connection with Jenner's representation of the Trustee in this case. Copies of these computerized records are attached hereto as <u>Exhibit D</u>.

14. Attached hereto as <u>Exhibit E</u> is a detailed list of all expenses for which Jenner seeks reimbursement.

15. All of the services for which compensation is sought were rendered to the Trustee solely in connection with the Debtor's bankruptcy case and not on behalf of any individual creditor or other person.

**BASIS FOR PAYMENT**

16. Professional services and expenses for which compensation and reimbursement are sought were rendered and expended on behalf of the Trustee in connection with the Debtor's bankruptcy case. All of the fees and expenses sought to be paid or reimbursed in this Application were actual, necessary, and reasonable, and benefited the Debtor's estate and creditors.

17. During the Application Period, Jenner performed a variety of tasks on the Trustee's behalf. While a detailed descriptions of the day-to-day services provided and the time

4

expended performing such services are attached as <u>Exhibit D</u>, a summary of the services Jenner provided to the Trustee during the Application Period are described in paragraphs 18 through 39 below.

**Bankruptcy of John M. Schoppe**
**(Fees: $170,225.00; Hours 478.90)**

18.    This category primarily consists of time spent conducting Rule 2004 discovery and examinations of insiders and third parties and analyzing the voluminous document productions in connection with such discovery.  Further, this category includes Jenner's efforts in analyzing and summarizing the Debtor's various property holdings and business transactions with insiders and non-insiders in the months preceding the Debtor's bankruptcy filing.  The category also includes time spent communicating with various third-parties regarding discovery production and potential claims the Debtor's estate may have held against those parties.

19.    As special counsel to the Trustee, Jenner was charged with the investigation of the acts, conduct, assets, liabilities and financial condition of the Debtor, the management of the Debtor's various interests and any other matters relevant to the case.  Prior to conversion, the Official Committee of Unsecured Creditors (the "Committee") alleged serious fraud claims perpetrated by the Debtors.  The Committee had begun its own 2004 examinations which were still in process at the time of the conversion of the case.  The Committee turned over the documents it had received but many of the documents were incomplete and the requests for production of documents were inadequate to produce sufficient records to complete a thorough investigation.

20.    Jenner undertook a review of the documents and financial records, and worked with the Trustee's forensic accountant, Gould & Pakter ("Pakter"), to identify missing account records and other information necessary to a complete forensic investigation.  Jenner and Pakter

5

conferred extensively on the subject of the documents required for an effective and comprehensive reflection of the Debtor's financial condition prior to the Petition Date. Initially, Jenner identified, from the records received from Committee, the financial documents required by Pakter for its investigation. Then, Jenner prepared and filed a motion to conduct Rule 2004 examinations, which was granted, and issued over fifty subpoenas with unique riders requesting additional documents and records from financial institutions, potential fraudulent transfer recipients, and insiders of the Debtor.

21. Additionally, the Trustee had marshaled all of the Debtor's numerous business records, and Jenner eventually received 224 boxes of documents and business records to be reviewed for potential recoverable assets and a picture of the Debtor's pre-petition real estate transactions. These documents were initially located in a storage facility and required review and designation for transmittal to Jenner's office. These voluminous documents had to be organized and indexed for the most efficient review for further investigation.

22. Jenner also recovered six computer CPUs from the Debtor's former offices. As part of the forensic investigation and preservation of the chain of custody of the records, Jenner engaged the services of a technology specialist firm that imaged the hard drives of the CPUs and extracted an index of files to be examined. The indexed files enabled Jenner and Pakter to examine only necessary files of the thousands of files normally contained in most business computers. The technology forensics employed and the resulting index saved untold man hours in examining unnecessary and extraneous files.

23. Further, Jenner undertook the task of researching and identifying the various business interests of the Debtor including real estate holdings, financial transactions, business entities, historical litigation information and corporate records. As part of its investigation,

Jenner also examined the ownership and potential value of certain assets discovered during the course of its investigation. These assets included insurance policies and interests in real estate in the names of each of the Debtors, as well as family members and related persons and entities, in numerous counties in Illinois.

24. Finally, Jenner also prepared for and took the Rule 2004 examinations of the Debtor and Christopher Pennington. As a result of its preliminary investigation, Jenner researched and prepared summaries of potential causes of action against numerous parties.

25. A more detailed description of the time spent related to this matter is attached hereto as <u>Exhibit D</u>.

**Fee/Employment Applications**
**(Fees: $55,472.00; Hours 151.20)**

26. During the Application Period, Jenner prepared Jenner's first and final fee application as special counsel to the Trustee. This category includes time spent by Jenner attorneys and paraprofessionals reviewing time entries and drafting the narrative portions of the fee application. Time in this category includes time spent assisting other non-lawyer professionals in the preparation of retention pleadings and fee applications. Finally, this category includes time spent, at the Trustee's request, reviewing the final fee applications and invoices of the Creditors' Committee, Coman & Anderson, John Lipinsky and other professionals in the case. Jenner prepared and prosecuted objections to fees incurred by certain of the other retained professionals and the Creditors' Committee. A more detailed description of the time spent related to this matter is attached hereto as <u>Exhibit D</u>.

**Avoidance Actions**
**(Fees: $200,488.50; Hours 495.80)**

27. This category of time is devoted to time spent by Jenner professionals analyzing and pursuing certain insider and non-insider avoidance claims. During the Application Period,

7

upon the identification of potential claims, Jenner conducted further Rule 2004 discovery in support of the claims, and drafted several avoidance action complaints. The Rule 2004 discovery conducted in this category was specific to the complaints and is separate from discovery under the category, "Bankruptcy of John M. Schoppe." This category includes time spent analyzing and considering causes of action against numerous parties, drafting complaints and other pleadings, conducting legal research, examining the applicability of various defenses raised by certain avoidance action targets, negotiating with various parties and related matters.

28. Prior to conversion the Debtor had filed a complaint against Kent Hill, alleging that Mr. Hill was the recipient of preferential payments from Debtor in the amount of $9,000. An offer had been made to settle that case, and once the Trustee was appointed he asked Jenner to assess the case and settlement offer. Jenner evaluated the preference, drafted a settlement agreement and settled the case.

29. Prior to conversion, the Debtor had filed a complaint against his father, R.J. Schoppe (R.J.), entitled *John Schoppe v. R. J. Schoppe*, Adversary Case No. 10-239, alleging that R.J. was the recipient of preferential payments from Debtor in the amount of $78,760.50 in the one year period immediately preceding the Petition Date. The case was scheduled for trial soon after the Trustee's appointment, so the Trustee sought and obtained a continuance in order to conduct discovery. Jenner prepared written discovery and took R.J. Schoppe's deposition. Jenner also worked with Pakter in its analysis and preparation of an expert report. A trial was scheduled for May 3, 2011. Jenner prepared for trial, researched various issues, and prepared, filed and served the Trustee's exhibit lists, witness lists and proposed findings of fact and conclusions of law. During this time, the parties were engaged in settlement negotiations and on May 2 the parties settled the case. On May 10, 2011, Jenner filed a motion to compromise and

8

settle the case, and an order authorizing settlement was entered on May 31, 2011. (Docket Nos. 688, 696.) The case against R.J. was dismissed on July 12, 2011. (Adv. 10-239, Docket Nos. 49, 50.)

30. On July 18, 2011, Jenner filed an adversary case against the Debtor's brother, Michael Schoppe ("Michael"), entitled *Safanda v. Michael Schoppe*, Adversary Case No. 11-1520, to avoid $292,265.57 in alleged preferential transfers, actual fraudulent transfers and constructive fraudulent transfers, and for the disallowance of claims, pursuant to the Bankruptcy Code and the Illinois Uniform Fraudulent Transfer Act. Jenner prepared a pre-trial statement, drafted discovery, and responded to discovery requests. The parties engaged in settlement negotiations and on February 16, 2012, the parties settled the case. On February 29, 2012, Jenner filed a motion to compromise and settle the case, and an order authorizing settlement was entered on March 22, 2012. (Docket Nos. 771, 774.) The case against Michael was dismissed on July 23, 2012. (Adv. 11-1520, Docket No. 25.)

31. A more detailed description of the time spent related to this matter is attached hereto as <u>Exhibit D</u>.

> **Other Litigation**
> **(Fees: $206,948.00; Hours 451.70)**

32. This category of time is devoted to time spent by Jenner professionals with respect to litigation other than avoidance actions.

33. Most of the time in this category is related to protracted litigation with Piccione, Keeley & Associates, Ltd. ("PKA") and William Roberts ("Roberts"). Before the Debtors commenced their bankruptcy cases, PKA represented Schoppe and certain of his affiliates in a known as *Roberts v. Schoppe, et al.* (Case No. 06-LLK-489) lawsuit pending before the Kane County court (the "State Court Case"). The State Court Case concerned a dispute over certain

9

commercial properties to which Schoppe or the other Debtors held title (the "Commercial Properties"). William G. Roberts ("Roberts"), the plaintiff in the State Court Case, also asserted an interest in the Commercial Properties. The State Court appointed a receiver (the "Receiver"), who collected rents from the Commercial Properties and deposited such rents into an account (the "Account") and paid related liabilities from the Account. PKA alleged that in April 2008 the Debtor assigned his interest in the Account to PKA to secure payment of PKA's legal fees and procure PKA's continued representation of the Debtor in the State Court Case. After the Petition Date and prior to the conversion of the case, PKA filed adversary case number 09-666, seeking a declaratory judgment that the Debtors had no interest the Account due to the assignment by the Debtors to PKA. The adversary was ultimately dismissed for lack of jurisdiction.

34. After the Trustee was appointed, he moved for turnover of the funds from the Receiver. On January 11, 2011, the Bankruptcy Court directed the Receiver to transfer the proceeds from the Account to the Trustee. (Docket No. 605.) On March 25, 2011, PKA filed an adversary complaint, entitled *PKA v. RML Capital Investment LLC, et al.*, Adv. Case No. 11-756, which also named the Trustee as a defendant. PKA sought a declaratory judgment that the monies turned over by the Receiver to the Trustee were pre-petition funds that had been assigned to PKA and in which the Trustee, the Debtors or Mr. Roberts did not have any interest. By the claims and counterclaims, PKA, the Trustee, and Roberts contested which party held superior rights to the monies. Nearly two years of litigation followed, including, motions and responses for clarification, summary judgment briefing, depositions, and hearings.

35. On June 28, 2012, Judge Barbosa determined that the Debtor's pre-petition assignment of rents to PKA was binding on the Trustee, but that a trial would be required on the

extent to which those monies were pre- or post-petition rents.  Thereafter, the Trustee and PKA agreed to resolve their dispute regarding the Account Proceeds.  On April 25, 2013, the Bankruptcy Court issued an Order confirming that Roberts held no interest in the monies, granting the Trustee's and PKA's motion for summary judgment against Roberts, and denying Roberts' motion for summary judgment.  Case No. 11-756, Docket No. 141.)  The Trustee and PKA ultimately settled their dispute, which was approved by the Court on May 30, 2013.  (Docket Nos. 792, 795.)

36. Throughout the litigation with PKA and Roberts, Jenner researched issues, prepared and filed an answer and counterclaim in the adversary and prepared and defended a motion for summary judgment, and attended the deposition of the Receiver.  Jenner also prepared for an evidentiary hearing on the summary judgment motions and attended numerous other contested hearings.

37. This time category also includes time spent by Jenner researching and preparing a number of draft adversary complaints contemplated to be filed in the case, including:  Safanda v. Cynthia Boggs, alleging breach of contract; Safanda v. Edward Kirch, Jr., Tina Kirch and Old Second National Bank, as Trustee, alleging breach of contract with respect to three transactions; Safanda v. Jon and Denise Throntveit, alleging breach of contract with respect to two transactions.  After negotiations with the parties and diligent discovery, the likelihood of prevailing in these matters was limited and the Trustee declined to pursue them.  Jenner also pursued the determination that certain life insurance insurances were property of the estate and prepared for potential litigation with respect to same.  After research and discovery, the Trustee determined not to pursue litigation related to the policies.

11

38. A more detailed description of the time spent related to these matters is attached hereto as Exhibit D.

### Communications with Creditors
### (Fees: $12,657.00; Hours: 39.50)

39. During the Application Period, Jenner responded to various inquiries from individual creditors of the Debtor including questions regarding the circumstances surrounding the Debtor's bankruptcy filing, the status of the Debtor's case, the Debtors' property holdings and real estate transactions and allegations of fraud. Jenner also had numerous discussions and utilized the notes of the former chair of the Committee  A more detailed description of the time spent related to this matter is attached hereto as Exhibit D.

\*    \*    \*

40. The foregoing professional services were necessary and appropriate to the administration of the Debtor's estate. Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved. Jenner has taken significant efforts to ensure that the professional services were performed with expedience and in an efficient manner and without duplication of effort.

41. The rates charged by Jenner in this case are its standard rates for a bankruptcy matter. The rates charged by Jenner also are consistent with reasonable and customary hourly rates charged by other attorneys throughout the country in matters of similar complexity, scope and national significance.

42. Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

12

>In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including
>
>>(A)   the time spent on such services;
>>
>>(B)   the rates charged for such services;
>>
>>(C)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>>
>>(D)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;   and
>>
>>(E)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. § 330(a)(3).

43.   Because of the benefits realized by the Debtor's estate, the nature of this case, the standing at the bar of the attorneys who rendered services, the amount of work done, the time consumed, and the skill required, Jenner requests that it be allowed at this time compensation for professional services rendered during the Application Period in the sum of $645,790.50.

13

## ACTUAL AND NECESSARY EXPENSES

44. Jenner has disbursed, and requests reimbursement of, the following sums for:

| Description | Amount |
| --- | ---: |
| Business Meals | 71.90 |
| Clerk of Court Fee | 250.00 |
| Corporate Document Fee | 148.50 |
| Court Reporter Fees | 2,556.34 |
| Database Research | 769.98 |
| Docket Expense | 42.00 |
| Document Production Expense | 4,767.49 |
| Forensic Technology Research Fees | 4,805.00 |
| In-City Transportation | 158.80 |
| Lexis Research | 824.78 |
| Out of Town Travel | 364.10 |
| Pacer Fees | 942.86 |
| Photocopy and Related Expenses | 11,612.67 |
| Postage | 625.77 |
| Publication Fees | 13.80 |
| Real Estate Title Research Fees | 2,665.00 |
| Special Messenger Service | 622.22 |
| UPS | 59.69 |
| Westlaw Research | 11,470.96 |
| TOTAL | $42,771.86 |

A more detailed list of these expenses is part of Exhibit E hereto.

45. It is Jenner's policy to charge all of its clients for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is Jenner's policy to charge its client only the amount actually incurred by Jenner in connection with such items. Examples of such expenses are postage, Lexis and Westlaw research, overnight mail, courier delivery, transportation, airfare, meals, and lodging.

46. Jenner only charges for overseas or out-of-the-country long distance telephone calls. It does not charge for facsimile transmissions.

14

47. Computer assisted legal research is used whenever the researcher determines that using Westlaw or Lexis Nexis is more cost effective than using traditional (non-computer assisted legal research) techniques. Jenner bills each client for the Lexis and Westlaw charges actually incurred on behalf of such client. Jenner does not prorate these charges over all clients so that each client is paying only for the Lexis and Westlaw charges incurred by that client.

48. Jenner's standard charges for scanning, printing and document reproduction range from $.06 per page for scanning, to $.10 per page for black and white reproductions/printing, to $.20 per page for color reproductions/printing. These charges are recorded and captured automatically by the various systems used by Jenner personnel to scan, print and reproduce paper documents.

## NOTICE

49. Notice of this Application has been given to (a) the Office of the United States Trustee; (b) the Internal Revenue Service; (c) all parties who have requested notice in this case; and (d) all creditors who have filed proofs of claim in the Debtor's case. In light of the relief requested, Jenner submits that no further notice is required.

50. No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, Jenner respectfully requests: (i) allowance of compensation for professional services rendered during the Application Period in the amount of $645,790.50; (ii) allowance of reimbursement for actual and necessary expenses Jenner incurred during the Application Period in the amount of $42,771.86; (iii) authorization for the Trustee to pay Jenner for the professional services rendered during the Application Period in the amount of $645,790.50; (iv) authorization for the Trustee to reimburse Jenner for actual and necessary

expenses Jenner incurred during the Application Period in the amount of $42,771.86; and (v) that the Court grant Jenner such other and further relief as is just.

Dated: August 9, 2013

                                      Respectfully submitted,

                                      JENNER & BLOCK LLP

                                      By: */s/ Christine L. Childers*
                                                    A Partner

Ronald R. Peterson (2188473)
Christine L. Childers (6277245)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: 312-222-9350
Facsimile: 312-527-0484

16